**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**CAROL A. KATTER**,

               **Plaintiff,**                            **Case No. 2:07-CV-43**
                                                       **JUDGE GREGORY L. FROST**
               **v.**                                 **Magistrate Judge Abel**

**OHIO EMPLOYMENT RELATIONS BOARD,
CRAIG R. MAYTON, KAREN L. GILLMOR, and
MICHAEL G. VERICH,**

               **Defendants.**

## OPINION & ORDER

       This matter comes before the Court for consideration of a motion for summary judgment
(Doc. # 12) filed by Plaintiff Carol A. Katter ("Plaintiff"), a memorandum in opposition (Doc. #
17) filed by Defendant Ohio Employment Relations Board ("Defendant"), and a reply.  (Doc. #
18.)  Also before the Court is Defendant's motion for summary judgment (Doc. # 9), a
memorandum in opposition (Doc. # 13), and a reply.  (Doc. # 17.)  For the reasons that follow,
this Court grants Plaintiff's motion (Doc. # 12) and denies Defendant's motion.  (Doc. # 9.)

## A. Background

       Plaintiff has been a teacher in the St. Marys City Schools ("School") since 1986.
Plaintiff is Roman Catholic.  She has been a member of the Holy Rosary Church her entire life.
Because of her religious beliefs, Plaintiff never joined the St. Marys Education Association/Ohio
Education Association/National Education Association ("Union").  Namely, Plaintiff objects to
supporting the Union because the Union supports abortion rights.  Thus, Plaintiff believes that if
she supported the Union, she too would be supporting abortion.  Consequently, Plaintiff alleges
that if she were a member in the Union, she would violate her obligations to the Church, commit

sin against God, and potentially lose her eternal life.

Until August 2005, Plaintiff's decision not to join the Union posed no problem with the School.  Then on August 20, 2005, the Union and the School entered into a new collective bargaining agreement ("Agreement").  As a result of the Agreement, Plaintiff was required to either join the Union or pay an agency fee to the Union as a condition of employment.

Pursuant to Ohio Revised Code Chapter 4117, Plaintiff filed an application for a religious exemption with the State Employment Relations Board ("SERB").  *See* Ohio Rev. Code Ann. § 4117.09(C).  Ohio Rev. Code § 4117.09(C) permits SERB to exempt a bargaining unit member from payment of dues or fair share fees to her union if she is a "public employee who is a member of and adheres to established and traditional tenets or teachings of a bona fide religion or religious body which has historically held conscientious objections to joining or financially supporting an employee organization. . . ."  Plaintiff requested in her application that the Union redirect her fair share fees to a charity.  *See* § 4117.09(C) (stating that [t]he employee shall be required, in lieu of the fair share fee, to pay an amount of money equal to the fair share fee to a nonreligious charitable fund exempt from taxation under section 501(c)(3) of the Internal Revenue Code mutually agreed upon by the employee and the representative of the employee organization. . .").

When determining whether to grant Plaintiff's exemption, Defendant followed the guidelines set forth in § 4117.09(C).  Plaintiff was able to verify with Defendant her membership and adherence to the tenets and teachings of the Holy Rosary Church.  Plaintiff, however, was unable to provide Defendant with documentation that the Holy Rosary Church "has historically held conscientious objections to joining or financially supporting an employee organization."  §

4117.09(C). Thus, pursuant to the statutory directive, on May 18, 2006, Defendant denied Plaintiff's request for a religious exemption. *See* § 4117.09(C) stating that SERB may not grant exemptions to public employees who hold sincere religious objections to joining or financially supporting employee organizations, but who are *not* members and adherents of religions that historically have held conscientious objections to such support).

On January 22, 2007, Plaintiff filed her Complaint (Doc. # 2) in the current case. Pursuant to 42 U.S.C. § 1983, Plaintiff alleges that Defendant acting under the color of state law discriminated against her on the basis of her religious preference. Specifically, Plaintiff alleges that § 4117.09(C) violates the establishment clause and free exercise clause of the First Amendment. Plaintiff contends that her First Amendment rights were violated when Defendant denied her an accommodation because she is not a member of a church with doctrines approved by the State of Ohio. Furthermore, Plaintiff claims that Defendant violated her rights under the equal protection clause of the Fourteenth Amendment when Defendant denied her an accommodation while previously granting accommodations to members of churches with doctrines approved by Defendant.

Plaintiff now requests the following relief: (1) a declaratory judgment, pursuant to 28 U.S.C. § 2201 declaring that § 4117.09(C) is unconstitutional and that Plaintiff is retroactively entitled to an exemption; (2) a permanent injunction that enjoins Defendant and its members from applying § 4117.09(C) in a way that discriminates on the basis of religion, and that requires Defendant to retroactively grant Plaintiff a religious exemption; and (3) costs and attorneys' fees incurred in the litigation of this case.

After Plaintiff filed her Complaint, the Union granted Plaintiff's requested

accommodation on January 24, 2007 by agreeing to send all of Plaintiff's fees to a mutually

agreed upon charity.  The Union also agreed to accommodate Plaintiff in future years if Plaintiff

provides the Union with a fair share fee form indicating her fair share fee status each

membership year.  Moreover, on January 31, 2007, the Union informed Plaintiff that it agreed to

make her accommodation retroactive to the date that Plaintiff applied for an exemption.

## B. Discussion

### 1. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56(c).  The initial burden of showing the absence of any such

"genuine issue" rests with the moving party: it must inform the district court of the basis for its

motion, and identify those portions of "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with affidavits, if any," which it believes demonstrate the absence of

a genuine issue of material fact.  Fed. R. Civ P. 56(e).

The burden then shifts to the non-moving party who "must set forth specific facts

showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,

250 (1986) (quoting Fed. R. Civ. P. 56(e)).  The non-moving party cannot rest on its pleadings or

merely reassert its previous allegations.  Fed. R. Civ. P. 56(e).  It is insufficient "simply [to]

show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus.

Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  Rather, Rule 56(e) "requires the

nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary

material in support of its position.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

 In viewing the evidence, the Court must draw all reasonable inferences in favor of the non-moving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial.  *Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *See Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Consequently, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

The Court must therefore grant a motion for summary judgment if Plaintiff, who has the burden of proof at trial, fails to make a showing sufficient to establish the existence of an element that is essential to his case.  *See Muncie*, 328 F.3d at 873 (citing *Celotex Corp.,* 477 U.S. at 324.)  However, in ruling on a motion for summary judgment, "a district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim."  *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).

### 2. Standing

Defendant claims that Plaintiff lacks standing to challenge the constitutionality of § 4117.09(C).  Specifically, Defendant contends that Plaintiff cannot show how a favorable

decision would redress any injury that she has suffered.  For the reasons that follow, this Court

disagrees and finds that Plaintiff has standing.

Standing is an integral part of the threshold requirement of Article III of the Constitution

that those who seek to invoke the power of the federal courts must allege an actual case or

controversy.  *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).  Standing is based upon the facts as

they exist at the time the complaint is filed, and Plaintiff bears the burden of proof.  *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Moreover, a plaintiff must "clearly and

specifically set forth facts sufficient to satisfy these Article III standing requirements.  A federal

court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations

of standing." *Whitemore v. Ark.*, 495 U.S. 149, 155-56 (1990).

The Sixth Circuit Court of Appeals has recently explained again the threshold

requirement of standing:

> [T]o establish standing to bring suit, a plaintiff must show that (1) he or she has "suffered
> an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not
> conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of
> the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be
> redressed by a favorable decision."

*Fieger v. Ferry*, 471 F.3d 637, 643 (6th Cir. 2006) (quoting *Friends of the Earth, Inc. v. Laidlaw*

*Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180-81 (2000)).

A plaintiff satisfies the redressability requirement by showing "' that a favorable decision

will relieve a discrete injury to himself.'"  *Mass. v. E.P.A.*, 127 S.Ct. 1438, 1458 (2007) (quoting

*Larson v. Valentine*, 456 U.S. 228, 244 n.15 (1982)).  Plaintiff need not show that a favorable

decision will relieve her *every* injury.  *Id.*

Plaintiff must demonstrate standing separately for each form of relief sought.  *Friends of*

*the Earth Inc.,* 528 U.S. at 180-81.  Defendant invokes *City of Los Angeles v. Lyons* to contend

6

that Plaintiff lacks standing to pursue injunctive or declaratory relief.  461 U.S. 95 (1983).   The facts of *Lyons*, however, are factually distinguishable from the present case.  Thus, Defendant's analogy to *Lyons* is misplaced.

In *Lyons*, city police officers placed the plaintiff in a chokehold and injured him after stopping him for a traffic violation. As a result, he sought injunctive relief to bar the use of such tactics by city police. *Id.* at 95.   The Plaintiff alleged that "he justifiably feared that any future contact he might have with police officers might again result in his being choked without provocation." *Id.*  The Supreme Court, overturning the injunction granted by the lower court, held that the plaintiff lacked standing to seek injunctive relief for failure to show likely future injury from police brutality notwithstanding the plaintiff's standing to sue for damages.  *Id.* at 110-13.

Here, Plaintiff has standing based on the facts as they existed when the Complaint (Doc. # 2) was filed on January 22, 2007.  Plaintiff allegedly suffered an actual injury.  Namely, her First and Fourteenth Amendment rights were allegedly violated when Defendant denied Plaintiff's application for a religious exemption pursuant to § 4117.09(C).  Thus, Plaintiff's claimed injury is directly attributable to Defendant's decision to deny her an exemption.  Finally, Plaintiff satisfies the redressability requirement.  A decision from this Court could relieve Plaintiff of a discrete injury.  This Court notes that the Union eventually accommodated Plaintiff, but only *after* Plaintiff filed her complaint, making it immaterial for purposes of standing. Notwithstanding this accommodation, Plaintiff, who continues to teach at the School and is bound to the Agreement, is also still subject to an overarching allegedly unconstitutional statute. Because § 4117.09(C) does not entitle Plaintiff to an exemption, Defendant may attempt to

enforce the statute and deny Plaintiff an exemption despite the Union's efforts to accommodate her.  Thus, with respect to the facts in *Lyons*, it is as if Plaintiff here is still being choked.  Unlike *Lyons*, Plaintiff's injury with respect to her request for declaratory and injunctive relief is not speculative.  This Court has the power to free Plaintiff from this statutory scheme and thereby redress at least one of Plaintiff's alleged injuries.

### 3. Mootness

Defendant contends that because the Union has accommodated Plaintiff, her action is now moot.  This Court is unconvinced.

Like standing, mootness is a threshold jurisdictional issue.  *See, e.g, Bruder v. Smith*, 215 F. App'x. 412 (6th Cir. 2007).  The mootness doctrine is related to the concept of standing in the sense that it requires that a plaintiff have continued standing throughout the duration of the action.  *See* 15 James Wm. Moore, *Moore's Federal Practice* § 101.94, at 101-176.5 (3d ed. 2003).  In contrast to standing, however, the mootness doctrine focuses on what has happened since the plaintiff initiated the action.  *Id.*  A case becomes moot when subsequent events make it absolutely clear that the effects of the alleged violation have been completely eradicated, and the allegedly wrongful behavior cannot reasonably be expected to reoccur.  *See Bruder*, 215 F. App'x. at 415 (citing *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 530-31 (6th Cir. 2001); *see Moore's* at 101-170.  Thus, as a result of subsequent events, a case is moot because the legal issue is no longer amenable to review such that judicial relief would serve no purpose.  *Moore's*, at 101-170.  In other words, a judicial decision can no longer affect the rights of the litigants.

A higher court taking an action or a legislature altering the state of the law are examples

of subsequent events that may render a case moot. Specifically, with respect to cases involving governmental officials, statutory changes to a challenged practice are generally enough to render a case moot. *See Ky. Right to Life Inc. v. Terry*, 108 F.3d 637, 644 (6th Cir. 1997); *but see Hooper v. Morkle*, 219 F.R.D. 120, 124 (S.D. Ohio 2003) (citations omitted) (stating a "court is precluded from finding mootness only when the legislature has openly expressed its intent to reenact the challenged law"). This Court has also noted that with respect to private parties, a defendant's voluntary cessation of challenged conduct will not render a case moot because the defendant "remains free to return to his old ways." *Hooper*, 219 F.R.D. at 124 (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632-33 (1953)).

Moreover, a change in the legal relationship between the parties or some factual incident that affects the party may also render a case moot. *See Bruder*, 2007 WL 215718, at *4; *Cooley v. Granholm,* 291 F.3d 880 (6th Cir. 2002) (holding that physicians' suit challenging the constitutionality of Michigan's anti-euthanasia statute barring physician-assisted suicide was mooted by retirement of one physician and relocation of other to another state); *Caldwell v. Craighead*, 432 F.2d 213, 218 (6th Cir. 1970) (holding that free speech case was mooted when student moved to another city and left the school system); *Pederson v. La. State Univ.,* 213 F.3d 858, 873-75 (5th Cir. 2000) (holding that an injunctive relief claim asserted by female university students in Title IX effective accommodation suit, but not damages claims, were mooted as to graduated named plaintiffs).

In *Bruder*, the plaintiff sought injunctive relief after being terminated from her position as former assistant county prosecutor. *See Bruder*, 215 F. App'x. at 412-16. The plaintiff alleged that her termination violated her due process rights because her employer had failed to

provide her a pre-discharge hearing.  *Id.*; *see Cleveland Bd. of Educ. v. Loudermill*, 470 U.S.

532, 542 (1985) (stating that public employees have a property right in continued employment

and cannot be deprived of that right without due process).  After the plaintiff filed suit, the

employer rescinded the termination, gave the plaintiff a hearing, and terminated her again. *See*

*Bruder*, 215 F. App'x. at 412-16.  After finding that there was no "demonstrated probability" or

"reasonable expectation" that the Plaintiff would ever be terminated again without being

afforded due process, the Sixth Circuit dismissed the appeal as moot. *See Bruder*, 215 F. App'x.

at 415-17 (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)).

Conversely, a case is not moot if a plaintiff retains some personal stake in the controversy

and there are some outstanding issues that are amendable to judicial resolution. *Moore's*, at 101-

170.  Thus, those claims may proceed for review notwithstanding the fact an intervening event

might have rendered other issues moot.  *Id.*

In *McPherson v. Mich. High School Athletic Ass'n., Inc*., a high school student brought

an action challenging the state high school association's eight semester eligibility rule. 119 F.3d

453 (6th Cir. 1997).  The district court entered a preliminary injunction forbidding the school

association and school district from enforcing the rule and/or penalizing the student for his

participation in basketball games.  *Id.* at 455.  At the time of the appeal, the season was over, and

the student had participated in all of the games.  The Sixth Circuit held, however, that the case

was not moot.  *Id.* at 458.  If the injunction was reversed, the student may have been forced to

retroactively forfeit his basketball games.  *Id.*  Thus, despite the fact that the injunction provided

the student an accommodation, the relief sought would still affect the legal interests of the

parties.

10

Here, Defendant analogizes the facts of this case to *Bruder* and contends that Plaintiff's case is moot. This Court finds that *Bruder* is factually distinguishable and that Defendant's analogy is inapt. In *Bruder*, the effects of the alleged violation were completely eradicated, when Defendant reinstated the Plaintiff and gave Plaintiff her due process rights before Defendant terminated Plaintiff again. Not only was the plaintiff in *Bruder* no longer subject to an unconstitutional deprivation, but after being properly fired it was highly unlikely that she would have been rehired and fired again. *Bruder* would have been analogous to the present case if Plaintiff had retired from the school without planning to teach again. That factual scenario would have also been comparable to the doctors retiring and relocating in *Cooley* or the students graduating in *Pederson.* Here, Plaintiff plans to teach at the school for many more years. Moreover, a comparison could have been drawn to *Bruder* if the State of Ohio in the present case had repealed the statute. If the State of Ohio had revoked § 4117.09(C) in pertinent part, Plaintiff's rights would have been fully vindicated and the possibility that Defendant would have attempted to enforce the statute against her would have been completely eliminated.

The situation in the present case, however, is inapposite to *Bruder*. Notwithstanding Plaintiff's accommodation from the Union, the Union's accommodation is still allegedly in violation of § 4117.09(C). The State of Ohio has not repealed the statute nor has it expressed its intent to do so. Thus, Plaintiff is still subject to an overarching allegedly unconstitutional statutory scheme. The existence of this statute allegedly discriminates against her on the basis of her religion. Moreover, it creates the possibility that Defendant may attempt to enforce the statute and deny Plaintiff an exemption despite the Union's efforts to accommodate her. Therefore, unlike *Bruder*, this Court cannot conclude with any degree of certainty that Plaintiff's

11

rights have been fully vindicated such that Plaintiff no longer has any stake in the outcome of this litigation.  Rather, like *McPherson*, Plaintiff's legal rights may be effected by the relief sought.

Thus, this Court finds that this case is not moot.

### 3. The Establishment Clause

First, Plaintiff posits that a portion of § 4117.09(C) violates the establishment clause of the First Amendment.  This Court agrees.

The establishment clause of the First Amendment dictates that "Congress shall make no law respecting an establishment of religion."  U.S. Const. amend. I; *Mitchell v. Helms*, 530 U.S. 793, 807 (2000).  Since *Everson v. Bd. of Educ.*, 330 U.S. 1 (1947), "[the Supreme] Court has adhered to the principle, clearly manifested in the history and logic of the Establishment Clause, that no State can 'pass laws which aid one religion' or that 'prefer one religion over another.'" *Larson*, 456 U.S. at 246 (quoting *Everson*, 330 U.S. at 15).

Under the establishment clause, when a plaintiff claims that the statute gives a denominational preference, the initial inquiry is whether the law facially differentiates among religions. *Wilson v. Nat'l Labor Relations Bd.,* 920 F.2d 1282, 1286 (6th Cir. 1990). (citing *Larson*, 456 U.S. at 246).  If the law facially discriminates among religions by conferring a benefit based upon denominational preference, Supreme Court and Sixth Circuit precedent demands that this Court treat the law as suspect.  *Larson*, 456 U.S. at 246*; see also Wilson,* 920 F.2d at 1286-87.  Consequently, laws that differentiate among religions are subject to strict scrutiny and "'must be invalidated unless it is justified by a compelling governmental interest.'" *Wilson,* 920 F.2d at 1287 (quoting *Larson*, 456 U.S. at 246).

12

This Court finds for reasons that follow that § 4117.09(C) facially differentiates between religions. Therefore, a facially neutral analysis is unnecessary. The Sixth Circuit, however, in *Wilson* proceeded to analyze the religious objector provision (" § 19") of the National Labor Relations Act ("NLRA")–which is "virtually identical" to § 4117.09(C)-- under a facially neutral analysis notwithstanding its finding that § 19 was facially differential. *See Wilson*, 920 F.2d at 1287 (stating that "[a]lthough application of the *Lemon* test is unnecessary to resolve the present case, we note that section 19 would also fail to pass constitutional muster under that test"). In light of the Sixth Circuit's framework in *Wilson*, the parties' reliance on *Wilson* in their briefing, and recent opinions of the United States Supreme Court, this Court will clarify establishment clause jurisprudence with respect to assessing the constitutionality of facially neutral laws.

The Supreme Court has modified the test set forth in *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971) (stating that the constitutionality of facially neutral laws is adjudicated by considering whether the statute (1) has a secular purpose; (2) has the primary effect of advancing or inhibiting religion; and (3) creates an excessive entanglement between government and religion). Under current establishment clause jurisprudence, when a law provides a uniform benefit to all religions, a court should measure its constitutionality by a two prong test. *See Mitchell*, 530 U.S. at 808. First, a court must consider whether the statute has a secular purpose. *Id.* Second, a court must ask whether the statute has the primary effect of advancing or inhibiting religion. *Id.* Thus, the Supreme Court no longer separately applies the "excessive entanglement" prong of *Lemon. Id.* Rather, *Lemon's* entanglement inquiry has been subsumed with significantly less weight as one criterion relevant to determining a statute's effect. *Id.*

Specifically, in assessing the statute's effect, a court should ask whether eligibility of the

aid is defined by neutrally eligible criteria, and whether the aid results in religious indoctrination

by the government.  *Mitchell*, 530 U.S. at 808-35 (holding that Chapter 2 of Title I of the

Elementary and Secondary Education Act of 1965, under which the federal government

distributes funds to state and local government agencies, which in turn lend educational materials

and equipment to public and private schools, does not violate the establishment clause).   In the

context of school vouchers and other forms of direct aid, the Supreme Court has also emphasized

the principle of private choice as a way of assuring neutrality of effect.  *Mitchell*, 530 U.S. at 816

(stating that "if aid to schools, even 'direct aid', is neutrally available and, before reaching or

benefitting any religious school, first passes through the hands (literally or figuratively) of

numerous private citizens who are free to direct the aid elsewhere, the government has not

provided any 'support of religion.' "(quoting *Witters v. Wash. Dept. of Servs. For Blind*, 474

U.S. 481, 488-89 (1986))).  Thus, according to *Mitchell*, if a law seeks to further a legitimate

secular purpose and offers aid on the same terms with respect to that purpose, then the Court will

assume that any aid going to a religious recipient only has the effect of furthering that purpose.

*See Mitchell*, 530 U.S. at 824-35 (stating that aid--in the form, for example, of textbooks- that is

secular in content and provided neutrally to the school is constitutional, whether the aid may be

diverted to religious use is irrelevant to the constitutionality inquiry, because any advancement

of religion is clearly not attributable to the government own activities and influence).

   In *Wilson,* the Sixth Circuit held that § 19 of the NLRA violated the establishment clause

of the First Amendment.  *Wilson*, 920 F.2d at 1290.   Section 19 of the NLRA, as amended in

1980, provided in relevant part:

> [a]ny employee who is a member of and adheres to established and traditional
> tenets or teachings of a bona fide religion, body, or sect which has historically

14

> held conscientious objections to joining or financially supporting labor organizations shall not be required to join or financially support any labor organization as a condition of employment; except that such employee may be required in a contract between such employees' employer and a labor organization in lieu of periodic dues and initiation fees, to pay sums equal to such dues and initiation fees to a nonreligious, nonlabor organization charitable fund....

29 U.S.C. § 169.

Examining the statute, the Sixth Circuit noted that § 19 required a particular sectarian affiliation and a particular theological position in order to be entitled to exemption. *Wilson*, 920 F.2d at 1288. Namely, § 19 required an employee to be "a member of and adhere[] to established and traditional tenants or teachings of a bona fide religion, body or sect, which has historically held conscientious objections to joining or supporting unions." *Id.*

Thus, § 19 facially differentiated between religions. *Id.* It created a denominational preference by conferring a benefit only on members of the religious organizations described in the statute. *Id.* at 1287. Accordingly, the Court subjected § 19 of the NLRA to strict scrutiny. *Id.* The Court found that § 19 violated the establishment clause because it failed to further an identifiable compelling government interest. *Wilson*, 920 F.2d at 1287. The Sixth Circuit also stated that "even were we to find that the statute served a compelling government interest of protecting religious freedom in the workplace, the statute would still fail strict scrutiny." *Id.* Specifically, the Court reasoned that the statute could have been more closely tailored to further that interest by providing protection to religious objectors without regard to membership in a particular religious organization. *Id.*

Here, this Court notes that it recently stated that § 19 of the NLRA is "virtually identical" to Ohio Rev. Code § 4117.09(C). *United States v. State of Ohio*, 474 F. Supp. 2d. at 924 n.4. Thus, based on *Wilson* and the fact that the pertinent part of § 4117.09(C) is virtually identical

to § 19, this Court could hold without further analysis that § 4117.09(C) is unconstitutional. The Court, however, offers several reasons to support its finding that the following portion of § 4117.09(C) violates the establishment clause.[1] :

Section 4117.09(C) states in pertinent part:

> [a]ny public employee who is a member of and adheres to established and traditional tenets or teachings of a bona fide religion or religious body which has historically held conscientious objections to joining or financially supporting an employee organization and which is exempt from taxation under the provisions of the Internal Revenue Code shall not be required to join or financially support any employee organization as a condition of employment. Upon submission of proper proof of religious conviction to the board, the board shall declare the employee exempt from becoming a member of or financially supporting an employee organization. The employee shall be required, in lieu of the fair share fee, to pay an amount of money equal to the fair share fee to a nonreligious charitable fund exempt from taxation under section 501(c)(3) of the Internal Revenue Code mutually agreed upon by the employee and the representative of the employee organization to which the employee would otherwise be required to pay the fair share fee.

Because Plaintiff claims that § 4117.09(C) gives a denominational preference, the initial inquiry is whether the law in fact facially differentiates among religions. *Wilson,* 920 F.2d at 1286 (citing *Larson*, 456 U.S. at 246). Like § 19, § 4117.09(C) requires an employee to be " a member of and adhere[] to established and traditional tenets or teachings of a bona fide religion or religious body which has historically held conscientious objections to joining or financially supporting an employee organization and which is exempt from taxation under the provisions of the Internal Revenue Code " *Id.* Section 4117.09(C) facially differentiates between religions. *Id.* It distinguishes between two employees who have the same religious beliefs and attend the

---

[1]    In light of this Court holding, this Court need not consider whether the statute also violates the free exercise clause of the First Amendment or the equal protection clause of the Fourteenth Amendment as Plaintiff also alleges.

same church, when one has actually become a formal member of the church.  The statute further

differentiates between two employees who have the same religious beliefs, are members of

churches with formal doctrines against supporting labor unions, but one of the churches has

recently embraced a doctrine, while the other church has historically embraced it.  It then creates

a denominational preference by providing special treatment to members of the religious

organizations described in the statute.  Specifically, the statute requires employers to provide a

substituted charity accommodation to members of religions having the beliefs described in the

statute.  On the other hand, non qualifying employees–who may have the same religious beliefs–

must file an action under § 701(j) of Title VII. 42 U.S.C. § 2000e(j).  Therefore, § 4117.09(C)

has the effect of increasing the advantages of membership in religions such as Seventh-day

Adventist and Amish Mennonites that have previously received exemptions.

Accordingly, this Court finds that § 4117.09(C) is subject to strict scrutiny.  *Wilson*, 920

F.2d at 1287.  This Court finds that Defendant has failed to state how § 4117.09(C) furthers an

identifiable compelling government interest.  *Wilson*, 920 F.2d at 1287.  Moreover, this Court

finds that even if the statute were to serve the compelling government interest of protecting

religious freedom in the workplace, the statute would still fail strict scrutiny.  Section

4117.09(C) could be more closely tailored to further that interest by providing protection to all

employees who hold bona fide religious beliefs without regard to membership in a particular

religious organization.  *Id.*

Given this Court's holding, this Court recognizes that "federal statutes are to be

construed so as to avoid serious doubts as to their constitutionality, and that when faced with

such doubts the Court will first determine whether it is fairly possible to interpret the statute in a

manner that renders it constitutionally valid." *Wilson*, 920 F.2d at 1289 (quoting *Commc'ns Workers of Am. v. Beck*, 487 U.S. 735, 762 (1988)).  If it is fairly possible to interpret the statute in a constitutional manner, then a court must review the legislative history to ensure that the altered interpretation does not embrace a construction that is clearly contrary to congressional intent.  *Wilson*, 920 F.2d at 1289 (stating that "we need not review the legislative history of section 19 because it is not 'fairly possible' to interpret the statute in manner that renders it constitutionally valid." (quoting *Commc'ns Workers of Am.*, 487 U.S. at 762)) (citations omitted).

In light of *Wilson*, this Court finds that it is not "fairly possible" to interpret § 4117.09 (C) in pertinent part as to render it constitutionally valid.  *See Wilson*, 920 F.2d at 1289.  Like § 19, there is the conjunction "and" in the first sentence of the relevant part of § 4117.09(C)[2] that makes it not "fairly possible"  to read the statute disjunctively and eliminate the membership requirement.

Defendant contends that § 4117.09(C) is constitutional because the statute is merely a supplemental remedy to the entitlement to a reasonable religious accommodation from the payment of union dues that Plaintiff may receive pursuant to Title VII.  The Court finds that Defendant's argument is meritless.

The existence of Title VII as a distinct remedy does not obviate Plaintiff's right not to be

---

[2]     Section 4117.09(C) states that [a]ny public employee who is a member of *and* adheres to established and traditional tenets or teachings of a bona fide religion or religious body which has historically held conscientious objections to joining or financially supporting an employee organization . . . (emphasis added);  *see*  § 102(F) (does not require that "and" be read as "or", but rather states that " 'and' may be read 'or,' and 'or' may be read 'and' if the sense requires it");  *Wilson*, 920 F.2d at 1289.

subject to an unconstitutional statute that discriminates against her on the basis of her religion in violation of her First Amendment rights.

Even if § 4117.09(C) is unconstitutional[3], the Court does recognize, however, that Plaintiff may still receive an exemption.  Plaintiff may be entitled to her current exemption pursuant to Title VII, which may serve as an entirely separate, independent basis to request a religious accommodation.  *Int'l Assoc. of Machinists & Aerospace Workers, Lodge 751*, 833 F.2d at 169-170 (stating that "the legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes.  The clear inference is that Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination.'" (quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 48-49 (1974))); *see also State of Ohio*, *State of Ohio*, 474 F. Supp. 2d. at 924-25 (stating that " in cases brought under Title VII, the Sixth Circuit has held that the duty to accommodate an employee's religious beliefs extends to unions as well as employers." (citing *Wilson,* 920 F.2d at 1282)).

---

[3]        The Court emphasizes that only the following portion of 4117.09(C) is unconstitutional [a]ny public employee who is a member of and adheres to established and traditional tenets or teachings of a bona fide religion or religious body which has historically held conscientious objections to joining or financially supporting an employee organization and which is exempt from taxation under the provisions of the Internal Revenue Code shall not be required to join or financially support any employee organization as a condition of employment. Upon submission of proper proof of religious conviction to the board, the board shall declare the employee exempt from becoming a member of or financially supporting an employee organization. The employee shall be required, in lieu of the fair share fee, to pay an amount of money equal to the fair share fee to a nonreligious charitable fund exempt from taxation under section 501(c)(3) of the Internal Revenue Code mutually agreed upon by the employee and the representative of the employee organization to which the employee would otherwise be required to pay the fair share fee.

Notwithstanding any separate right that Plaintiff may have under Title VII, a declaration from this Court declaring the portion of § 4117.09(C) as unconstitutional ensures that Defendant may no longer attempt to discriminate against her based on her religion. It is the existence of the statute– that facially and applicably discriminated against Plaintiff– coupled with the reasonable expectation that Defendant may attempt to enforce it against her–that violates the establishment clause of the First Amendment. By virtue of this Court's Order declaring a portion § 4117.09(C) unconstitutional, Plaintiff's First Amendment rights have been fully vindicated, regardless of whether Plaintiff is entitled to exemption based on Title VII.

### D. Conclusion

For the reasons aforementioned, this Court issues a declaratory judgment, pursuant to 28 U.S.C. § 2201, that the following portion of Ohio Rev. Code § 4117.09(C) is unconstitutional:

> [a]ny public employee who is a member of and adheres to established and traditional tenets or teachings of a bona fide religion or religious body which has historically held conscientious objections to joining or financially supporting an employee organization and which is exempt from taxation under the provisions of the Internal Revenue Code shall not be required to join or financially support any employee organization as a condition of employment. Upon submission of proper proof of religious conviction to the board, the board shall declare the employee exempt from becoming a member of or financially supporting an employee organization. The employee shall be required, in lieu of the fair share fee, to pay an amount of money equal to the fair share fee to a nonreligious charitable fund exempt from taxation under section 501(c)(3) of the Internal Revenue Code mutually agreed upon by the employee and the representative of the employee organization to which the employee would otherwise be required to pay the fair share fee.

Moreover, this Court permanently enjoins Defendant and its members from applying this portion of § 4117.09(C). This Court also awards Plaintiff the costs and attorneys' fees incurred in the litigation of this case.

20

Thus, this Court **GRANTS** Plaintiff's motion (Doc. # 12) and **DENIES** Defendant's motion. (Doc. # 9.)  The clerk shall enter judgment accordingly and terminate this case upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED.**

    /s/   Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE
